Ann TOWER, et al., Plaintiffs,

v.

Joan LESLIE–BROWN,
et al., Defendants.

No. 01–CV–85–B–S.

United States District Court,
D. Maine.

Oct. 9, 2001.

Ferdinand A. Slater, Esq., Hancock, ME, for plaintiffs.

Melissa Reynolds O'Dea, Esq., Assistant Attorney General, Augusta, ME, for defendants.

## ORDER

SINGAL, District Judge.

Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, seeking money damages for

alleged violations of their federal rights arising out of the arrest of one of the Plaintiffs at his home. Plaintiffs claim that Defendants violated their rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution and the Adoption and Safe Families Act, 42 U.S.C. § 670 *et seq.* Presently before the Court are Defendants' Motion for Partial Dismissal pursuant to Rule 12(b)(6) (Docket # 2), Plaintiffs' Motion for Default Judgment (Docket # 9), and Defendants' Motion to Seal the Record (Docket # 4). For the reasons discussed below, the Court GRANTS the Partial Motion to Dismiss, DENIES the Motion for Default Judgment, and GRANTS IN PART the Motion to Seal the Record.

## I. PARTIAL MOTION TO DISMISS

Plaintiffs Ann and William Tower, Jr., have filed suit against the Maine Department of Human Services ("DHS"), DHS caseworker Joan Leslie–Brown, the Maine State Police, Maine State Trooper Darryl Peary, Jr., and Michelle Dolley, the guardian ad litem of two of the Plaintiffs' children.[1] Defendants Leslie–Brown, Peary and Dolley are named as defendants in both their individual and official capacities.

The State Police, DHS, and Defendant Dolley have moved under Rule 12(b)(6) to dismiss the action against them in its entirety. Defendants Peary and Leslie–Brown have moved to dismiss the action against them in their official capacities only.

### A. Motion to Dismiss Standard

 A court considering a motion to dismiss under Rule 12(b)(6) must treat the factual allegations in the complaint as true and indulge reasonable inferences in the plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). The court may only grant the motion if it appears that, even if all the allegations in the complaint are true, the plaintiff cannot recover based on any viable legal theory. *See Gonzalez–Morales v. Hernandez–Arencibia,* 221 F.3d 45, 48 (1st Cir.2000).

For the purposes of this Order, therefore, the Court accepts the following version of the facts, as set forth in the Plaintiffs' Complaint:

### B. Background

On January 25, 2001, Trooper Peary and Ms. Leslie–Brown entered the Plaintiffs' residence at Moscow, Maine, apparently without a warrant either to search or arrest. Plaintiff William Tower, Jr., was in the home at the time but did not consent to their entrance. Mr. Tower asked them repeatedly to leave his home or to produce a warrant. The two Defendants ignored Mr. Tower's protests and placed him under arrest. His minor children were in the home and witnessed his being placed in handcuffs.

Law enforcement personnel who are not named in the Complaint removed Mr. Tower from his home, also in view of his children.[2] He did not resist the arrest but told the officers that he would need to take his heart medication with him if he was leaving. They did not permit him to retrieve the medication and removed him

---

1. Plaintiffs filed this action both individually and as the guardians of two of their children.

2. Some of the Plaintiffs' allegations are simply against "the police." (Compl. ¶ 1 (Docket # 1).) The Court assumes that law enforcement officers other than Trooper Peary must have been present because the Complaint alleges that Trooper Peary remained with Mr. Tower's children after Mr. Tower was removed from the home.

from his home without it, which allegedly caused him fear and distress.

Defendants Peary and Leslie–Brown remained with Plaintiffs' young children after Mr. Tower was removed from the premises. They remained on the property for approximately forty minutes before Plaintiff Ann Tower arrived home. During that forty-minute period, Peary and Leslie–Brown searched the premises and placed several long distance telephone calls that were billed to the Towers' account. When Ms. Tower arrived home, Peary prohibited her from entering the residence. Peary also denied her access to her children until after she had spoken with Leslie–Brown.

Leslie–Brown took the children into protective custody the same day, January 25, 2001, presumably under the authority of a protective order. The Towers complain that she did not inform them of the time or place the order would be sought and had not returned the children to their care as of the filing of the Complaint in this action on May 1, 2001.

## C. Discussion

### 1. State Police and Department of Human Services

Defendants Maine State Police and Maine DHS have moved to dismiss the action against them on the basis that, as state agencies, they are not subject to suit under section 1983. Section 1983 creates a federal cause of action against "every person" who acts under color of state law to deprive a plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. The Supreme Court has held that a state and its agencies are not "persons" as the term is used in section 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 65, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

■ Even though Plaintiffs concede that the State Police and Maine DHS are agencies of the State of Maine, they argue that the two entities can face municipal liability under section 1983. *See Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that municipalities, unlike states, are subject to suit under section 1983). The Maine State Police and the Maine DHS, however, are not municipalities, and therefore the Court determines that they are immune to Plaintiffs' section 1983 claims.

### 2. Defendants Peary and Leslie–Brown in their Official Capacities

■ Defendants Peary and Leslie–Brown argue that Plaintiffs may not maintain a section 1983 suit against them in their official capacities because, like the state itself, state officials acting in their official capacities are not "persons" under section 1983 and therefore may not be sued under that provision. *Will,* 491 U.S. at 71, 109 S.Ct. 2304 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and][a]s such, it is no different from a suit against the state itself.") According to the Complaint, Trooper Peary is an employee of the Maine State Police, and Leslie–Brown is a caseworker for DHS.

■ Plaintiffs nevertheless assert that the Defendants might be liable in their official capacities under a theory of supervisory liability. Although Plaintiffs are correct that a supervisor may be held liable under 1983 when her own actions cause a subordinate to violate another person's federal rights, *see Barreto–Rivera v. Medina–Vargas,* 168 F.3d 42 (1st Cir.1999), they simply have not pleaded facts that support supervisory liability. The Complaint alleges that Peary and Leslie–Brown violated Plaintiffs' rights directly,

not through the actions of their subordinates. *See, e.g., Figueroa–Torres v. Toledo–Davila,* 232 F.3d 270, 278–79 (1st Cir. 2000) (distinguishing direct from supervisory liability of police officers). Defendants Peary and Leslie–Brown therefore enjoy the same immunity from suit in their official capacities that their employing agencies do.

### 3. Defendant Dolley

■ Defendant Dolley argues that she is protected by the doctrine of quasi-judicial immunity for tasks undertaken pursuant to her role as the guardian ad litem of two of the Plaintiffs' children. Before the Court may entertain Defendant Dolley's defense, however, the Court must address the paucity of factual allegations against her in the Complaint.

The Complaint states,

The Guardian ad litem is, under State and Federal law, required to represent the best interests of the child(ren) and ensure the legal mandates of the parties, as relating to the children, are followed and adhered to. Observations of the Guardian ad litem reveal strong indications the removal of these two children has caused significant emotional trauma to them both. The Guardian ad litem, defendant Michelle Dolley, has willfully or recklessly caused harm to the children by failing to perform her statutory duties. Defendant Michelle Dolley has willfully or recklessly caused the children, [names omitted], for which the defendants owe a statutorily imposed duty of care, to be harmed by failing to provide for the best interests of the children in a reasonable and prudent manner. Defendants Joan Leslie–Brown and Michelle Dolley have violated

the fundamental rights to raise ones [sic] own children and be free from undue governmental interference, due process, equal protection, constitutional and civil rights of the children [names omitted] and of William, Jr., and Ann Tower guaranteed under the fourth, fifth, fourteenth amendment, 42 U.S.C. § 670 et seq., and 42 U.S.C. § 1983.

(Compl. ¶ 4 (Docket # 1).) The above-quoted language offers no insight on what wrongs Defendant Dolley allegedly has committed against Plaintiffs. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (requiring a complaint to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

The only hint provided to the Court by the Plaintiffs is the invocation of the Adoption and Safe Families Act, 42 U.S.C. § 670 *et seq.* This Act outlines a federal funding scheme for state adoption and foster care programs. 42 U.S.C. § 670. Federal funds are contingent upon the state's developing a comprehensive plan for its adoption and foster care programs that incorporates certain federal requirements. 42 U.S.C. §§ 671–73. Even assuming that a private right of action exists under this statute,[3] the Court was able to locate no provision targeted to the responsibilities of guardians ad litem. Perhaps Plaintiffs believe that Defendant Dolley has failed to abide by one of the requirements of Maine's state plan. Plaintiffs, however, do not allege how Defendant Dolley may have violated the Act, nor the state plan, nor do they specify which provision of either she contravened. The Court is not prepared to speculate on the matter.

---

**3.** This is a generous assumption. Certain provisions of the Act have been held conclusively not to establish a private right of action, even if invoked as part of a section 1983 claim. *See Suter v. Artist M.,* 503 U.S. 347, 363–64, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).

■ Although the federal pleading requirements are not onerous, they do impose upon claimants the responsibility of giving defendants at least some measure of notice as to what the claim entails. *See, e.g., Boston & Me. Corp. v. Hampton,* 987 F.2d 855, 862, 863 (1st Cir.1993); *Roth v. United States,* 952 F.2d 611, 613 (1st Cir. 1991). The Plaintiffs' allegations against Defendant Dolley are insufficient to meet even this minimum threshold. Plaintiffs have not made any factual allegations against Defendant Dolley, and therefore the Court finds that it must dismiss the case against her in all respects.[4]

## II. DEMAND FOR DEFAULT JUDGMENT

■ While the Motion for Partial Dismissal was pending, Plaintiffs moved for a default judgment against Defendant Dolley pursuant to Rule 55(a), based on her failure to answer the Complaint. Rule 55(a) authorizes a court to enter a default judgment against a party who has "failed to plead or otherwise defend" an action. The term "otherwise defend" "certainly includes the sort of motions that may be made under Rule 12. . . ." 6 Moore's Federal Practice § 55.10[2][b] (3d. ed.2000); *see Rudnicki v. Sullivan,* 189 F.Supp. 714 (D.Mass.1960). Defendant Dolley timely moved to dismiss the claims against her pursuant to Rule 12(b)(6), as discussed

above, and default judgment against her is therefore inappropriate.

## III. MOTION TO SEAL THE RECORD

Defendants have moved to seal the record in this action. They argue that in order to defend against Plaintiffs' claims, they will have to produce pleadings and records from the child protective matter in state court that underlies the present dispute. The proceedings and records in the state court are closed and sealed, pursuant to Maine state statutes. 22 M.R.S.A. §§ 4007–08. The Plaintiffs object to sealing the record.

■ In evaluating a motion to seal a judicial record, the Court is required to identify and balance the interests at stake. *Siedle v. Putnam Invs., Inc.,* 147 F.3d 7, 9 (1st Cir.1998). The Plaintiffs have advanced no personal interest in keeping the record open.[5] The argument for keeping the pleadings unsealed thus depends entirely upon the commonlaw presumption of public access to judicial records. *Nixon v. Warner Communications,* 435 U.S. 589, 602, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Siedle,* 147 F.3d at 9 (1st Cir.1998). This presumption is "no mere paper tiger" and accumulates even more weight when the government (or, as in this case, individuals acting under the color of governmental authority) is accused of wrongdoing. *FTC v. Standard Fin. Mgmt. Corp.,* 830 F.2d 404, 410 (1st Cir.1987). "[I]n such circum-

---

**4.** The defense of quasi-judicial immunity that Defendant Dolley has raised is a fact-based inquiry. *See Cok v. Cosentino,* 876 F.2d 1, 3 (1st Cir.1989). Even assuming, however, that Plaintiffs' allegations suffice to meet the pleading requirements, they merely state that Defendant Dolley had certain obligations under state and federal law that she failed to fulfill. She is entitled to absolute, quasi-judicial immunity for actions taken within the scope of her appointment as a guardian ad litem. *Id.* Because the Complaint at best alleges negligent performance of her duties, she

would be entitled to absolute immunity in any event.

**5.** The majority of the Plaintiffs' arguments focused on the public's First Amendment right to attend public hearings and a defendant's Fifth and Sixth Amendment rights to a public trial. Because the Court's ruling merely addresses whether the pleadings will be sealed, the Plaintiffs' arguments regarding the openness of any eventual trial are premature.

stances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Id.*

 However, "the right to inspect and copy judicial records is not absolute." *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306. In this case, the right to access must be balanced against a significant competing interest, the traditional confidentiality of child protective proceedings. *See San Bernardino County Dep't of Pub. Soc. Servs. v.Super. Ct. of San Bernardino County*, 232 Cal.App.3d 188, 198–99, 283 Cal.Rptr. 332 (1991). That the underlying child protective proceedings in this case are sealed by state statute counsels in favor of sealing the record in this federal action. Although the statutes closing the state proceedings do not govern this civil rights action in federal court,[6] they do demonstrate a legislative judgment that the State of Maine has an interest in maintaining the confidentiality of child protective proceedings. The state's interest is in protecting child victims from undue trauma and humiliation, *see id.*, 232 Cal.App.3d at 200, 283 Cal.Rptr. 332 (1991), facilitating the rehabilitation of families, *see id.*, and encouraging people to report child abuse and neglect by keeping their identities confidential, *see Pennsylvania v. Ritchie*, 480 U.S. 39, 60, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). If the Court were to allow the parties to import confidential documents into federal court and thereby make them public, it would seriously undermine the state's policy.

Other courts in this Circuit facing a similar task have found that the balance tipped in favor of denying public access when publicity would jeopardize either children caught up in the dispute or the child protective process itself. *Compare Sinclair v. Brill*, 815 F.Supp. 44 (D.N.H. 1993) (denying request by defendant parents to seal record where adult daughter sued for abuse suffered as a child) *with DeCosta v. Chabot*, No. CIV. 92–425–M, 1994 WL 279739 (D.N.H. June 9, 1994) (granting request by defendant state officials to seal documents pertaining to recent child abuse investigation). Here, the Defendants seek to seal the documents to protect the interests of Plaintiffs' children (including some not a party to this lawsuit) and the integrity of the underlying proceedings. The Court finds that these interests outweigh the Plaintiffs' generalized interest in public access to documents.

The sealing order will be tailored, however, to minimize the burden on the public's right of access. Only those records that contain sensitive information about the Plaintiffs' children will be sealed. Records that do not describe the underlying child protective dispute will remain unsealed, in order that the public may have continued access to information about the actions of their state officials.

 The Court therefore orders that when either party submits a document containing information derived from the underlying child protective proceeding, that pleading must be conspicuously identified as one to be filed under seal. Either party may also bring to the Court's attention any other filing that the party contends should be sealed, consistent with the analysis in this Order. The pleadings filed as of the date of this Order will remain unsealed because the Court determines that they contain no sensitive information other than the fact of the child protective proceedings.

Finally, this order applies only to the pleadings. The Court expresses no opin-

---

6. Because the state statutes do not control the actions of this Court and are used only as a measure of the state's interest in keeping the information confidential, the Court declines to address the Plaintiffs' arguments about the constitutionality of 22 M.R.S.A. § 4007.

ion at this time about whether any eventual trial will be open to the public.

IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' Motion for Partial Dismissal. The Court DISMISSES all claims against Defendants Maine State Police and Maine Department of Human Resources. The Court DISMISSES all claims against Defendants Peary and Leslie–Brown in their official capacities. The Court DISMISSES WITHOUT PREJUDICE all claims against Defendant Dolley in both her official and individual capacities.

Furthermore, the Court DENIES Plaintiffs' Motion for Default Judgment.

Finally, the Court GRANTS IN PART Defendants' Motion to Seal the Record. The Court seals the pleadings to the extent that they contain information derived from the underlying child protective proceedings. Both parties are ORDERED to identify upon filing those pleadings that contain such information.

SO ORDERED.